712 F.2d 1421
 229 U.S.App.D.C. 389
 Anthony R. MARTIN-TRIGONA, Appellant,
v.
William F. SMITH, Attorney General.
Anthony R. MARTIN-TRIGONA, Appellant,
v.
Philip SHIFF, et al.
Anthony R. MARTIN-TRIGONA, Appellant,
v.
ACTON CORPORATION, et al.
Appeal of Anthony R. MARTIN-TRIGONA.
Anthony GWARA
v.
William F. SMITH, U.S. Attorney General, et al.
Peter N. GEORGIADES
v.
Helen MARTIN-TRIGONA.
Appeal of Anthony R. MARTIN-TRIGONA.
Peter N. GEORGIADES
v.
Helen MARTIN-TRIGONA, Appellant.
Anthony R. MARTIN-TRIGONA, Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee,
Capital Cities Communications, Inc., Intervenor.
 Nos. 82-1392 to 82-1394, 82-2511, 82-2382, 83-1066 and 82-2516.
 United States Court of Appeals,
District of Columbia Circuit.
 June 30, 1983.
 
 [229 U.S.App.D.C. 390] Appeals from the United States District Court for the District of Columbia (D.C.Civil Action Nos. 81-01004, 81-03065, 82-00425, 82-01283 & 82-01763).
 Appeal from an Order of the Federal Communications Commission.
 Appellant, Anthony R. Martin-Trigona, pro se, was on the motion to vacate dismissal in No. 82-1392, the motion to proceed in forma pauperis in No. 82-2516, the oppositions to the motions to dismiss in Nos. 82-2382 and 83-1066, and entered appearances for appellant in all cases.
 Stanley S. Harris, U.S. Atty., Royce C. Lamberth, R. Craig Lawrence and Nathan Dodell, Asst. U.S. Attys., Washington, D.C., [229 U.S.App.D.C. 391] were on the motions for summary affirmance, for appellees, in Nos. 82-1393, 82-1394 and 82-2511, and the motion to dismiss or for summary affirmance, for appellee, in No. 82-1392.
 David Florin and Steven M. Levine, Washington, D.C., were on the motions to dismiss, for appellee, in Nos. 82-2382 and 82-1066.
 Bruce E. Fein, Daniel M. Armstrong and John P. Greenspan, Counsel, F.C.C., Washington, D.C., entered an appearance for appellee in No. 82-2516.
 David R. Anderson and Joel Rosenbloom, Washington, D.C., entered appearances for intervenor, Capital Cities Communications, Inc., in No. 82-2516.
 MOTION TO VACATE DISMISSAL
 (No. 82-1392)
 MOTIONS TO DISMISS
 (Nos. 82-1392, 82-2382 & 83-1066)
 MOTIONS FOR SUMMARY AFFIRMANCE
 (Nos. 82-1392, 82-1393, 82-1394 & 82-2511)
 MOTION TO PROCEED IN FORMA PAUPERIS
 (No. 82-2516)
 Before MIKVA* and EDWARDS, Circuit Judges, and MacKINNON, Senior Circuit Judge.
 Opinion for the Court PER CURIAM.
 
 PER CURIAM:
 
 1
 Anthony R. Martin-Trigona has filed many appeals in this court over the last few years.[1] Today, a Motions Panel of the court decides preliminary motions in seven of these appeals. With two exceptions, these appeals do not involve consolidated cases. Each case, however, grows in some way from Martin-Trigona's conviction in Illinois for mail fraud and subsequent bankruptcy proceedings involving two radio stations in which he had an interest. We conclude, therefore, that it is appropriate to treat all of the motions in one opinion.[2]
 
 
 2
 I. MARTIN-TRIGONA V. SHIFF & MARTIN-TRIGONA V. ACTON
 
 
 3
 In No. 82-1393, Martin-Trigona v. Shiff, and No. 82-1394, Martin-Trigona v. Acton Corp., Martin-Trigona contests the loss of his two radio stations in bankruptcy proceedings.[3] The district court dismissed each case before process was served on any of the defendants. The only contention Martin-Trigona presses on appeal is that Crisafi v. Holland, 655 F.2d 1305 (D.C.Cir.1981) (per curiam), prohibits dismissal of pro se prisoner complaints before service of process on any defendants. When Martin-Trigona moved to vacate and remand the cases for this reason, we denied his request. We later denied motions for rehearing and for rehearing en banc on the same issue. Crisafi merely prohibits a court from relying [229 U.S.App.D.C. 392] solely on an assertion of litigiousness in dismissing an in forma pauperis, pro se prisoner's suit as "frivolous or malicious" under 28 U.S.C. § 1915(d) (1976). 655 F.2d at 1309. Here, however, the trial judge patiently analyzed Martin-Trigona's two long, rambling complaints and wrote reasoned decisions explaining their dismissal. Martin-Trigona thus has no claim under Crisafi, and the Federal Communications Commission ("FCC") urges this court summarily to affirm the trial court's decisions.
 
 
 4
 This court will dispose of a case summarily only when the merits of a claim "are so clear as to justify expedited action." Ambach v. Bell, 686 F.2d 974, 979 (D.C.Cir.1982) (per curiam). Before taking summary action, therefore, we must carefully evaluate the propriety of the challenged dismissals. We also are required to examine closely a pro se complaint, however inartfully pleaded, to determine whether any possibility exists that the plaintiff could prove a set of facts in support of his claim that would entitle him to relief. See Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 595-96, 30 L.Ed.2d 652 (1972) (per curiam).
 
 A.
 
 5
 Because different charges in each complaint were dismissed for different reasons, we analyze each part of the dismissals separately. First, in both Shiff and Acton, the district court found that, to the extent that Martin-Trigona sought review of any FCC action that caused him to lose his radio station license, dismissal was proper because appellate courts have exclusive jurisdiction to review final orders of the FCC. See 47 U.S.C. § 402(b) (1976); 28 U.S.C. § 2342(1) (1976). Martin-Trigona did not contest this clearly correct ruling. City of Rochester v. Bond, 603 F.2d 927, 934-35 (D.C.Cir.1979).
 
 
 6
 Second, in Shiff, Martin-Trigona's complaint included two claims that already had been adjudicated in other federal courts. One involved a finding of civil contempt in the bankruptcy trial and the other protested a lack of access to the prison law library, an issue decided in Martin-Trigona v. Smith, No. 81-1497 (D.D.C. Feb. 2, 1982). The district court correctly concluded that Martin-Trigona already had been afforded an opportunity fully and fairly to litigate these claims, and that he was barred from raising or relitigating the issues. See Montana v. United States, 440 U.S. 147, 153-54, 99 S.Ct. 970, 973-74, 59 L.Ed.2d 210 (1979).
 
 
 7
 Third, in Acton, Martin-Trigona alleged that the actions of his attorney in the Connecticut bankruptcy proceedings violated his due process rights. The district court correctly concluded that there was no basis upon which it could assert personal jurisdiction over attorney Weiner. Martin-Trigona did not allege, and the court could not find, any contact between the lawyer and this forum. See International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).
 
 B.
 
 8
 Finally, Martin-Trigona's central complaint in both cases charged that certain individuals involved in the bankruptcy proceedings conspired to take the stations from him in violation of various federal and state laws. The district court dismissed the conspiracy claims after finding that they alleged wrongdoing within the bankruptcy proceedings themselves. In so doing, the court relied on Colorado River Water Conservation District v. United States, 424 U.S. 800, 818, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976) ("Colorado River"), and held that Martin-Trigona should air his complaints in the courts dealing with his bankruptcies. In our view, the district court misapplied Colorado River; accordingly, we vacate and remand.
 
 
 9
 Martin-Trigona's complaints in Shiff and Acton covered a wide range of state and federal law. In Shiff, for example,[4] Martin-Trigona [229 U.S.App.D.C. 393] charged that the trustee in bankruptcy, the two law firms involved, and the bankruptcy judge conspired to take the FCC license away from a radio station he owned, through involuntary bankruptcy proceedings. This conspiracy, he alleged, violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964 (1976) ("RICO"), and the Hobbs Act, 18 U.S.C. § 1951 (1976); obstructed justice in contravention of 18 U.S.C. § 1503 (Supp. V 1981) and 18 U.S.C. § 1505 (1976); violated his civil rights under 42 U.S.C. § 1985(2) (Supp. V 1981); deprived him of due process; interfered with existing and future commercial relationships; tortiously injured him; and offended traditional notions of fair play so egregiously that mandamus relief under 28 U.S.C. § 1651(a) (1976) was appropriate. Martin-Trigona's prayer for relief requested, inter alia, injunctions stopping the bankruptcy proceedings and barring the lawyers involved from appearing before the FCC or bankruptcy courts, money damages against the individual defendants, attorneys' fees, and expenses.
 
 
 10
 The district court addressed only the RICO claim, and it concluded:
 
 
 11
 Plaintiff's RICO claim concerns the same transaction on appeal in the Southern District of New York. The Court dismisses plaintiff's RICO claim, applying the guidelines set forth in Colorado River Water Conservation District v. United States, 424 U.S. 800, 818 [96 S.Ct. 1236, 1246, 47 L.Ed.2d 483] (1976): this forum is inconvenient for litigation concerning an out-of-state radio station; jurisdiction was first exercised in another forum; and dismissal would avoid piecemeal litigation.
 
 
 12
 Martin-Trigona v. Shiff, No. 82-0425, slip op. at 1 (D.D.C. Feb. 26, 1982).
 
 
 13
 We agree with the district court that, in essence, Martin-Trigona is complaining about his bankruptcy proceedings. Application of the Colorado River test, however, was inappropriate. In Colorado River, the government sued in federal court against some 1,000 water users, seeking a declaration of the government's rights to water in a specific part of Colorado. Shortly after the filing of this suit, one of the parties sought to determine the government's right to water in the same part of Colorado by joining the United States in a separate ongoing state proceeding. Both courts had valid jurisdiction, and the suits involved identical issues. On this basis, the Supreme Court concluded that despite the federal court's "virtually unflagging obligation ... to exercise the jurisdiction" given it, wise judicial administration counseled in favor of avoiding duplicative litigation. 424 U.S. at 817, 96 S.Ct. at 1246. The Court cautioned, however, that "[o]nly the clearest of justifications will warrant dismissal," id. at 819, 96 S.Ct. at 1247, and that "dismissal clearly would have been inappropriate if the state court had no jurisdiction to decide those claims." Id. at 809, 96 S.Ct. at 1242. See Moses H. Cone Memorial Hospital v. Mercury Construction Corp., --- U.S. ----, 103 S.Ct. 927, 943, 74 L.Ed.2d 765 (1983).
 
 
 14
 Martin-Trigona's situation bears little resemblance to Colorado River. A federal bankruptcy court would not have jurisdiction to hear all of the claims presented by Martin-Trigona or the power to order the relief requested. See Moses H. Cone Memorial Hospital, 103 S.Ct. at 943. The Bankruptcy Act of 1978, 28 U.S.C. § 1471(b) (Supp. V 1981) ("Act"), of course, gives federal bankruptcy courts broad jurisdiction over all "civil proceedings arising under title 11 [the bankruptcy title] or arising in or related to cases under title 11." Only recently have courts begun to interpret the Act, and it is not yet clear how far this jurisdiction will extend. In Northern Pipeline Const. Co. v. Marathon Pipe Line Co., --- U.S. ----, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), however, the Supreme Court ruled that non-Article III bankruptcy judges could not constitutionally adjudicate certain state law claims. See 102 S.Ct. at 2877-78 (plurality opinion); 102 S.Ct. at 2881 (concurring opinion). The state law claim in Northern Pipeline was based on breach of contract and warranty, misrepresentation, coercion, and duress. 102 S.Ct. at 2864. After Northern Pipeline, it seems [229 U.S.App.D.C. 394] clear that Martin-Trigona cannot assert in bankruptcy court his claims based on tort law and interference with existing and future commercial relationships, which are traditional state causes of action. Though not concurred in by a majority of the Justices, the plurality opinion also intimated that the bankruptcy courts cannot adjudicate claims based on the Constitution. 102 S.Ct. at 2877-78. This dictum casts doubt on the authority of the bankruptcy court to hear Martin-Trigona's Fifth Amendment due process claims.[5]
 
 
 15
 We realize that the district court decided Martin-Trigona's case before the Supreme Court's decision in Northern Pipeline, and that the decision was not applied retroactively. 102 S.Ct. at 2880. Our reference to Northern Pipeline simply helps to illustrate that the reach of bankruptcy jurisdiction is unclear; because the district court must make certain that the bankruptcy court has jurisdiction over all claims before deferring under Colorado River, its application of that doctrine to this case was inappropriate.
 
 
 16
 We have no occasion today to parse Martin-Trigona's complaint in order to decide which of his claims might or might not be heard by a bankruptcy judge. This job is for the district court in the first instance, and our discussion serves only to illustrate that the bankruptcy court might not have jurisdiction to address some of Martin-Trigona's claims. Colorado River teaches that only the clearest justification warrants dismissal once a federal court has jurisdiction over a claim, and dismissal is inappropriate if the alternative forum cannot decide the claims brought in the dismissing court. 424 U.S. at 809, 819, 96 S.Ct. at 1242, 1247. Many of Martin-Trigona's claims arguably state a valid cause of action on the face of the complaint.[6] We conclude, therefore, that it was inappropriate for the district court summarily to dismiss the complaint without a careful inquiry into whether the bankruptcy court could entertain all of the claims made.
 
 
 17
 In light of the foregoing, we hold that the district court should not dismiss a facially valid complaint in favor of concurrent bankruptcy proceedings without carefully analyzing whether the alternative forum can hear all of the claims in the complaint and grant adequate relief. Colorado River offers the district court a powerful tool for dismissing a case even though it has proper jurisdiction. A court should use this power sparingly, and only in the clearest of cases.
 
 
 18
 For the reasons set forth above, the district court decisions in these two cases are [229 U.S.App.D.C. 395] vacated and remanded for proceedings consistent with this opinion. On remand, the district court should first determine if there is any basis to the conspiracy charges. If it finds the possibility of nonfrivolous claims, it must then determine with certainty that the claims can be raised in an alternative (concurrent) forum before considering dismissal under Colorado River.
 
 II. THE CLASS ACTIONS
 
 19
 While in prison on the Illinois mail fraud conviction, Martin-Trigona filed a number of class actions "on behalf of all federal prisoners" challenging various prison conditions and policies. In No. 82-2511, Martin-Trigona v. Smith, Martin-Trigona and another federal prisoner were the named plaintiffs in a class action challenging procedures that allowed prison officials to delay making certain deposits to prison commissary accounts. The district court denied class certification because it found that Martin-Trigona, even though a law school graduate, could not adequately represent the class; the court also granted summary judgment on the ground of mootness because both prisoners already had been released.
 
 
 20
 This court recently addressed these issues in a nearly identical suit. In Martin-Trigona v. Smith, 712 F.2d 1420 (D.C.Cir.1983), Martin-Trigona challenged, on behalf of "all federal prisoners," the illegality of conditions to which he was exposed as a "holdover" prisoner. The court first noted that, because Martin-Trigona's conviction had been reversed and he had been released, all his individual claims were moot. Considering the class certification claim on the merits, the court found that Martin-Trigona was not qualified to represent such a large and geographically dispersed class, and concluded that a suit involving varying practices at diverse institutions across the country would be unmanageable in the district court. We then affirmed the district court's denial of class certification.
 
 
 21
 In the instant case, we agree with the district court that Martin-Trigona is not qualified to represent a class of all federal prisoners, and we conclude that the district court properly denied class certification. This conclusion means that there is no longer any live controversy before this court. Martin-Trigona's individual claims became moot when he was released from prison. Although a named plaintiff prisoner in a class action can continue to represent the class on appeal until the appellate court rules on class certification, once the appellate court determines that class certification was properly denied, the entire claim on the merits must be dismissed. United States Parole Commission v. Geraghty, 445 U.S. 388, 404, 100 S.Ct. 1202, 1212, 63 L.Ed.2d 479 (1980). For these reasons, we grant the government's motion for summary affirmance.
 
 
 22
 In No. 82-1392, Martin-Trigona v. Smith, Martin-Trigona, on behalf of all federal prisoners, seeks to bar the Attorney General from housing federal prisoners in nonfederal facilities that do not comply with the policy and program statements of the Federal Bureau of Prisons. Because of substantial confusion surrounding the mailing of Martin-Trigona's brief, we dismissed the case for failure to prosecute. We now vacate the dismissal and grant the government's motion for summary affirmance for the same reason set forth above justifying the affirmance in case No. 82-2511.
 
 III. CONCLUSION
 
 23
 In Nos. 82-1393 and 82-1394, we deny summary affirmance and vacate and remand the decisions of the district court for reconsideration in light of this opinion. In Nos. 82-2511 and 82-1392, we grant the government's motions for summary affirmance because we find the suits to be moot. In Martin-Trigona v. Federal Communications Commission, No. 82-2516, we grant the motion to proceed in forma pauperis, and in Martin-Trigona v. Georgiades, Nos. 82-2382 and 83-1066, we deny the appellee's motion to dismiss. See note 2, supra.
 
 
 24
 Judgment accordingly.
 
 
 
 *
 Circuit Judge Mikva did not participate in the consideration and disposition of these motions
 
 
 [1]
 Martin-Trigona is no stranger to the courts. He has filed 22 separate appeals in this court since 1971, and undoubtedly has initiated additional actions in the district court. The complaint in No. 82-1393, Martin-Trigona v. Shiff, is 36 pages long and the complaint in No. 82-1394, Martin-Trigona v. Acton, is 15 pages long. Both are rambling and confused, citing myriad legal theories and tangentially related facts. See also Martin-Trigona v. Shiff, 702 F.2d 380, 382 n. 1 (2d Cir.1983)
 
 
 [2]
 We can dispose of three of the motions summarily. In No. 82-2516, Martin-Trigona v. Federal Communications Commission, we grant Martin-Trigona's motion to proceed in forma pauperis. Based on the information before the court, we cannot conclude that his claim is frivolous; and it appears that he cannot pay the court's fees. He is unemployed, he has no savings, and his property is now subject to bankruptcy proceedings
 In two consolidated cases, Nos. 82-2382 and 83-1066, Martin-Trigona v. Georgiades, the appellee moved to dismiss Martin-Trigona's appeal for failure to timely file a brief and transcript. Martin-Trigona's filings were made six days after the court's deadline. This short delay, due in part to slow mails, does not justify dismissing the entire lawsuit of a pro se, in forma pauperis litigant.
 
 
 [3]
 Shiff involves the loss of station WHNC in New Haven, Connecticut. Acton involves station WDLW in Waltham, Massachusetts
 
 
 [4]
 In Acton, Martin-Trigona claimed that the company that offered to buy his radio station and the lawyer he hired to defend him in the bankruptcy proceedings conspired to take the station from him, in violation of all the same federal laws cited in Shiff
 
 
 [5]
 It is clear from the Act that a bankruptcy court has no power to enjoin another court. See 28 U.S.C. § 1481 (Supp. V 1981). One of the major components of the relief Martin-Trigona seeks is an injunction halting proceedings before all tribunals other than the FCC. See Complaint at p 152. While the bankruptcy courts in Shiff and Acton could stop their own proceedings, they could not enjoin any other court from proceeding. See In re Stuart Motel, Inc., 15 B.R. 28, 30 (Bkrtcy.S.D.Fla.1981). We do not mean to suggest that the district court in this case has unfettered power or authority to affect the proceedings of other tribunals. We mean only to indicate that the bankruptcy court has no such authority
 
 
 [6]
 For example, Martin-Trigona's complaint appears to state a cause of action under RICO. To prove a RICO claim, a complainant must show: (1) the existence of an enterprise; (2) that the enterprise affected interstate commerce; (3) that the defendant was employed by or associated with the enterprise; (4) that he participated, even indirectly, in the affairs of the enterprise; and (5) that he participated through a pattern of racketeering activity. United States v. Kopituk, 690 F.2d 1289, 1323 (11th Cir.1982). An enterprise includes any individuals associated in fact, 18 U.S.C. § 1961(4) (1976), and it can be inferred from the circumstances, United States v. Kopituk, 690 F.2d at 1323. Association with interstate commerce arguably is satisfied here by use of the interstate wires and mails. See United States v. Bagnariol, 665 F.2d 877, 892-93 (9th Cir.1981), cert. denied, 456 U.S. 962, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982). Obviously, all the defendants named in the complaint are associated with and participated in the enterprise that Martin-Trigona describes. Finally, a pattern of racketeering activity can be shown by two acts of racketeering activity, 18 U.S.C. § 1961(5) (1976), and racketeering activity includes, as the complaint pleads, wire and mail fraud. 18 U.S.C. § 1961(1) (Supp. V 1981). Though it may be difficult for Martin-Trigona to prove these charges, his complaint appears to plead a prima facie case