Joel P. BENNETT, Plaintiff,

v.

Helen MARTIN–TRIGONA, Defendant.

Civ. A. No. 87–0797.

United States District Court,
District of Columbia.

May 9, 1988.
As Corrected June 8, 1988.

Q. Russell Hatchl, Washington, D.C., for plaintiff.

Helen Martin–Trigona, Alexandria, Va., pro se.

MEMORANDUM

JOHN GARRETT PENN, District Judge.

The plaintiff, Joel P. Bennett (Bennett), filed this action on January 2, 1987 based on diversity of citizenship. The action was filed in the United States District Court for the Eastern District of Virginia, and was thereafter transferred to this court on the defendant's motion. The case is scheduled for a jury trial on May 10, 1988 [1], and is

1. A pretrial conference was held on May 2, 1988.

now before the Court on the Bennett's motion for summary judgment.[2]

## I

The underlying facts are as follows: Bennett is an attorney who, on April 4, 1985, entered into a contract for legal services (hereinafter referred to as the "Contract") with the defendant, Dr. Helen Martin–Trigona (Martin–Trigona), to represent her in her discrimination claims against the University of the District of Columbia (University). Martin–Trigona is a professor of English at the University and complained that the school discriminated against her. The discrimination action was tried before this Court non-jury and the Court found for the University defendants (referring to all of the defendants named in the discrimination action). *Martin–Trigona v. University of the District of Columbia*, 668 F.Supp. 682 (D.D.C.1987). After the trial, but prior to the decision in the discrimination action, Bennett moved to withdraw as the attorney for Martin–Trigona apparently due to the dispute over attorney's fees. The Court granted the motion to withdraw, but before the Court ruled on the motion, Bennett filed this action before the United States District Court for the Eastern District of Virginia. This Court thereafter granted the motion permitting Bennett to withdraw as Martin–Trigona's counsel in the discrimination action. Martin–Trigona moved to transfer this case to this district and the motion was granted.

Bennett contends that Martin–Trigona presently owes him $25,735.04 for his services. Martin–Trigona filed an answer and counterclaim in which she admits that she retained Bennett to represent her in the discrimination action, that she entered into the Contract[3] (Plaintiff's Motion Exhibit B–1), and that Bennett represented her in the discrimination action. She contends that Bennett overcharged her, that he has not accounted for all payments made and

for credits allowed, that he breached the Contract, that he never submitted the fee dispute to arbitration as provided for in the Contract, that Bennett originally filed this action in Virginia to harass and embarrass her while the discrimination claims were still pending, and that the Contract should not be enforced because it is unconscionable.[4] Martin–Trigona makes other arguments as to the reason Bennett originally filed this action in Virginia, but those arguments do not impact upon the present dispute between the parties.

## II

Bennett filed his motion for summary judgment pursuant to Fed.R.Civ.P. 56. Rule 56 provides that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c). The rule provides further that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials in his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." Rule 56(e).

Additionally, Local Rule 108(h) provides that each motion for summary judgment "shall be accompanied by a statement of material facts as to which the moving party contends there is genuine issue, which shall include references to the parts of the record relied on to support the statement." That rule provides further that an opposition to the motion "shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to

---

2. The plaintiff filed his motion for summary judgment on March 21, 1988. The defendant moved to extend the time to reply due to a death in her family. Her opposition was filed on April 21, 1988. Plaintiff's reply was filed on April 28, 1988.

3. The Contract was for legal services.

4. Martin–Trigona appears pro se in this action.

which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement." Finally, the rule provides that in determining a motion for summary judgment, the court "may assume that facts identified by the moving party in its statement of material facts are admitted, unless such fact is controverted in the statement of genuine issues filed in opposition to the motion."

The standards to be applied in considering a motion for summary judgment are also set forth in two relatively recent decisions of the Supreme Court; *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The Court now applies the above standards to the facts involved in the present dispute.

### III

█ First, the Court notes that Martin–Trigona, in responding to the motion for summary judgment, has failed to file the required statement of genuine issues as to which there is a genuine dispute of material facts; therefore, the facts as stated by Bennett must be deemed to be admitted. *See* Local Rule 108(h). Based upon Martin–Trigona's failure to comply with the local rule, and the resulting admission of facts caused thereby, Bennett is entitled to summary judgment without more. But, Martin–Trigona is not an attorney, and although it is clear that she has a greater knowledge of the law than the average pro se litigant, the motion and the opposition should be carefully considered.[5]

Bennett has established that the parties entered into the Contract. *See* Plaintiff's Motion Exhibit B (Bennett Affidavit), par. 5; Plaintiff's Motion Exhibit B–1. Martin–

Trigona does not dispute entering into the Contract. *See* Defendant's Opposition at 1; Plaintiff's Trial Exhibit 33 at 9–11 (Martin–Trigona Deposition) (defendant's deposition where she identifies the Contract, states that she signed it, read it and understood it). When Bennett's attorney asked Martin–Trigona whether the Contract was complicated, Martin–Trigona replied: "I am a professor and I know how to read. I happen to be an English professor, among other things, and there's nothing—it's very plainly spelled out. There's nothing I don't understand." Martin–Trigona Deposition at 16.

The above establishes beyond any doubt that there is no factual dispute relating to the Contract entered into between the parties, and that Martin–Trigona fully understood its terms.

Bennett seeks, not only a determination that the Contract is valid; he also seeks a money judgment. In support of this part of his claim he has set forth a detailed statement of his claim fully supported by his billing records. *See* Bennett Affidavit, pars. 7–15, 25–31; Plaintiff's Motion Exhibits B–1 to B–24. These records support Bennett's claim that his hourly rate and the other rates charged are consistent with what is provided in the Contract, that the rates charged are reasonable, and that Bennett expended the hours charged and that the time charged is reasonable.

Based upon the detailed documents submitted by Bennett, the Court has no choice but to find that he is entitled to judgment as a matter of law in the amount asked for *unless* Martin–Trigona has raised a factual issue, or unless there is a legal argument that she can make which would negate the argument made on behalf of Bennett. If she cannot meet this test, then, as noted, this Court has no alternative but to enter judgment against her.

---

**5.** Martin–Trigona has had considerable experience in litigation. *See e.g., Martin–Trigona v. Gellis & Melinger,* 265 U.S.App.D.C. 219, 830 F.2d 367 (1987); *Georgiades v. Martin–Trigona,* 234 U.S.App.D.C. 345, 729 F.2d 831 (1984); *Martin–Trigona v. Federal Communications Commission, Martin–Trigona v. Smith,* 229 U.S.App. D.C. 389, 712 F.2d 1421 (1983). In all, research

reveals that Martin–Trigona and/or her son are named as parties in at least 109 court decisions. Two of the above identified cases involve actions in which Martin–Trigona was involved in litigation over attorney's fees that Martin–Trigona agreed to pay for representation of her son in various matters.

## IV

As has been discussed, the existence of the Contract is no longer at issue. Martin–Trigona freely admits that she read it, signed it, and understood it.

Martin–Trigona has argued throughout this case that, although she entered into the Contract with Bennett, she was led to believe that the total attorney's fees would not exceed $15,000. But, as noted above, she read and understood the Contract, and the Contract cannot be read as providing that the total costs would not exceed $15,-000. The Contract provides that: "Attorney *estimates* that the total cost ... from present through trial will be $10,000–15,-000. This is *not* a guarantee or limit, or a flat or fixed fee. Attorney will inform client in advance if this estimate will be exceeded, if feasible to do so in advance. Client has a duty to monitor cumulative charges and so advise attorney." Contract par. 13 (emphasis in the Contract). The Contract contains a similar provision for costs. Contract par. 14.

Martin–Trigona argues that Bennett either overcharged her, or did not give her proper credit for payments made by her. She has had a full and complete statement of the charges made by Bennett and it would have been relatively easy for her to demonstrate that she made payments that were not properly credited, by submitting a copy of her returned check, or money order, or receipt for payment. She has not done so. She has contended throughout this proceeding that she will call an expert witness to challenge the accounting procedure used by Bennett; but a party cannot defend against a motion for summary judgment by proffering what she intends to offer at trial.

When a motion for summary judgment is filed, the adverse party cannot rely upon vague representations as to what she hopes to establish at trial, she "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc., supra,* 106 S.Ct. at 2511 (footnote omitted). "[T]he trial judge *shall* then grant summary judgment if there is no genuine issue as to any material fact."

*Id.* (emphasis this Court's). "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id.* Plaintiff could have filed an affidavit by her expert challenging Bennett's calculations on this issue but chose not to do so; therefore, this Court cannot speculate as to what her expert would have testified.

Moreover, when Martin–Trigona was asked to explain why the accounts were in error, she stated that: "I cannot—I cannot give you any answers on the reconstruction of the accounts. I haven't studied the accounts. I'm going to have a professional do that and I'm going to minutely myself screen everything before we go to trial and I need the evidence, but right now I didn't come prepared to discuss accounts." Martin–Trigona Deposition at 35. *See also* Martin–Trigona Deposition at 37–38.

The above demonstrates that there is no genuine issue as to any material fact in this case, even when the Court overlooks the failure of Martin–Trigona to file the required Local Rule 108(h) statement.

## V

Finally, the Court considers whether there is any legal argument made by Martin–Trigona which would prevent the granting of summary judgment to Bennett.

Martin–Trigona argues that the Contract should not be enforced because it is unconscionable. This Court disagrees.

"Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party. Whether a meaningful choice is present in a particular case can only be determined by consideration of all the circumstances surrounding the transaction." *Williams v. Walker–Thomas Furniture Co.,* 121 U.S.App.D.C. 315, 319, 350 F.2d 445, 449 (1965).

Martin–Trigona contends that she had no meaningful choice but to retain Bennett, but nothing in the record supports that

contention. She is well educated and understood the Contract. While she may quarrel with some provisions of the Contract, she was free to retain Bennett or look elsewhere for legal representation. When her previous attorney moved to withdraw, over a fee dispute, she could have sought additional time to seek to retain counsel. Bennett is well known in the legal community as attorney who has handled a substantial number of discrimination cases and it appears that she wanted someone of that background to represent her. This was a free choice that she made, knowingly and voluntarily.

While the Court questions the use of maximum late payments charges as set forth in the Contract, such payments do not exceed the interest rate allowed by law. And, the charge of such a fee does not violate the Code of Professional Responsibility. *See* Opinions of the D.C. Bar Legal Ethics Committee 1984, Opinion No. 11.

■ Martin–Trigona raises several other issues that have little or no merit and which have no effect on the outcome of this case. She contends that her deposition should not be used against her during a trial or in consideration of the instant motion because Bennett never gave her a chance to read it. But, the fact is that it was not Bennett's obligation to provide the deposition for her. Once Bennett took Martin–Trigona's deposition in preparation for this case, it was transcribed by the reporter. The deposition was taken on September 21, 1987. On September 30, 1987, the reporter sent Martin–Trigona a statement advising her that she could purchase a copy of the deposition for $95.55. Defendant's Trial Exhibit 39. Martin–Trigona states that she did not desire to buy the deposition, she only wanted to obtain a copy to read it to determine whether it accurately reflected her testimony. She contends that she never had an opportunity to read the deposition.

Her own exhibit contradicts her statement, however, since it reflects that the reporter wrote her on September 28, 1987 advising her that the deposition had been transcribed and was "ready for reading and signing" by her. Defendant's Trial Exhibit 39. In the letter, the reporter advised Martin–Trigona that "[i]f we do not hear from you within 30 days of the date hereon (or three days before the trial date, whichever occurs first), the unsigned original transcript along with a copy of this letter will be filed with the court at that time." Martin–Trigona contends that the only place the reporter would allow her to read the deposition was Fairfax and that she had no means of going there for that purpose. But, the reporter's letter states that the deposition could be read in the reporter's office in Fairfax, "or if [the] deposition was taken in D.C., it [could] be read and signed there." *Id.* The deposition had been taken in the District of Columbia so that option was available to her.[6]

The above represents a factual dispute between the parties; a factual dispute which the Court cannot resolve in considering a motion for summary judgment. The Court concludes, however, that the dispute does not involve a *material* fact for the purpose of the motion. While the Court has quoted from portions of the Martin–Trigona deposition, the parts quoted have not been disputed by Martin–Trigona. She does not dispute that she signed the Contract or that she understood the Contract, and she does not dispute that she did not have any facts at the time the deposition was taken to dispute the amounts billed at the time the deposition was filed.

---

6. There is a dispute between the parties as to whether Martin–Trigona was advised that she could review the deposition in the District of Columbia. Martin–Trigona filed an affidavit in which she states that she was never given the option to read the deposition in the District of Columbia. Martin–Trigona Affidavit par. 6. Bennett filed an affidavit from the office manager of the reporting company in which it is stated that Martin–Trigona never ordered the deposition and that she called the reporting company and "insisted her transcript be sent to her for review and was told [the reporting company] would not permit the original to leave [its office]" but that she could go to the office to read the original. The affiant states that when nothing else was heard from Martin–Trigona, the deposition was filed on November 23, 1987. Johnson Affidavit par. 4 (dated May 5, 1988).

Additionally, the Court notes that Martin–Trigona has not identified any parts of the deposition as being inaccurate although she has had access to the deposition for several months. The original was filed in November 1987 and could have been read by her. Moreover, Bennett has identified the deposition as a potential exhibit in the trial, *see* Plaintiff's Trial Exhibit 33, and Martin–Trigona could have reviewed the deposition within the last week since Bennett included a copy of the deposition in his exhibit package furnished to the Court and Martin–Trigona.

The Court finds the objections relating to the deposition to be without merit.

Martin–Trigona argues, in addition, that the Court has allowed Bennett to undertake discovery, but has not allowed her to do the same. In this regard, she is apparently referring to the Court's denial of her motion to dismiss or to compel. *See* Order filed January 27, 1988.

In denying Martin–Trigona's motion to compel the Court noted that Martin–Trigona did not "set forth the discovery she is seeking to obtain from the plaintiff. Moreover, defendant has not complied with the applicable rules in filing the motion for discovery in that she has not identified the discovery she seeks to obtain from the plaintiff." Order filed January 27, 1988.

Local Rule 107(a) provides for the nonfiling of discovery materials, but Local Rule 107(b) provides that: "Any motion concerning discovery matters shall be accompanied by a copy of, or shall set forth verbatim, the relevant portion of any nonfiled discovery materials to which the motion is addressed." Martin–Trigona filed a one sentence motion which did not identify the discovery she sought.[7] The docket sheet does not reflect that the Interrogatories or Requests for Production of Documents have been filed. Bennett also objected to the discovery on the grounds that it was untimely since discovery was to be completed on November 30, 1987.

The Court notes that a status hearing was held on November 23, 1987 at which time Martin–Trigona requested additional time to complete her discovery. Under these circumstances, the Court does not hold that her discovery is untimely; rather, the Court adheres to its ruling on the motion that Martin–Trigona had not identified to the Court the discovery she sought.

Accepting, for the purpose of the pending motion, that the Interrogatories and Request for Production were the subject of an order to compel, the Court observes that the responses would have no bearing on the pending motion. The requested discovery has been identified as potential exhibits by Martin–Trigona. *See* Defendant's Trial Exhibits 10 (Interrogatories) and 11 (Demand for Production of Documents). The Interrogatories request Bennett to furnish the names of the officers of his corporation, and to state whether any person in the corporation has written a book, or been involved in a fee dispute, or used drugs, or been under the care of a psychiatrist or other mental health professional. The Request for Production of Documents seeks copies of the incorporation papers, files relating to fee disputes, and copies of correspondence with counsel for plaintiff (Bennett) and copies of files maintained by Bennett involving Martin–Trigona or any member of her family. Nothing requested relates to the Contract or the amount Bennett contends is due under the Contract.

Bennett has recently filed responses and objections to the above discovery, and without discussion, it is clear that the discovery is not relevant to the pending motion and that certain interrogatories and requests are objectionable. *See* Plaintiff's Supplemental Memorandum in Opposition to Defendant's Motion to Compel Discovery filed May 4, 1988.

In short, with respect to the discovery request of Martin–Trigona, the Court concludes that it has no effect on the pending

---

**7.** It is clear that Bennett was served with the discovery that Martin–Trigona sought to compel since Bennett opposed the discovery on the grounds that it was untimely. *See* Plaintiff's Objection to Defendant's Demand for Production of Documents and Interrogatories to Plaintiff or Its Officers, Directors Employees, Owners filed December 7, 1987.

motion, and further, that the failure of Martin–Trigona to receive the requested discovery does not prejudice her or affect her ability to defend against the pending motion.

 Another issue raised by Martin–Trigona relates to the arbitration provision included in the Contract. Under the terms of the Contract, Bennett and Martin–Trigona agreed to submit any fee dispute to the Fee Arbitration Board of the District of Columbia for binding arbitration. Contract par. 9. Martin–Trigona contends that Bennett refused to submit the case to arbitration. On the other hand, Bennett contends that he did not do so because both parties would be required to agree to arbitration and he felt Martin–Trigona would not be agreeable.

Arbitration agreements are favored and only recently the Supreme Court has spoken on the enforceability of voluntary pre-dispute arbitration agreements between brokage firms and their customers. *Shearson/American Express, Inc. v. McMahon,* — U.S. —, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). The arbitration agreement in the instant case was not raised until the parties were well within this litigation, and neither party made an attempt to compel the other to submit the claim to arbitration pursuant to the Contract. Indeed, while Bennett did not pursue arbitration, he did, through his attorney, request that the Fee Arbitration Board send to Martin–Trigona the necessary forms for requesting that their fee dispute be submitted to binding arbitration. Defendant's Trial Exhibit 31. Martin–Trigona never pursued the arbitration claim. For this reason, her claim that Bennett refused to arbitrate or submit the matter to arbitration is without merit.

Finally, Martin–Trigona contends that Bennett changed the theory of her discrimination action when he agreed to represent her. There is no doubt that he did so. In his letter to Martin–Trigona, dated November 18, 1985, he discusses the changes he proposed to make in order to pare the case down to a Title VII nonjury case. Martin–Trigona has presented nothing to suggest that she was unaware of the decision to change the case, or that she did not consent to the change.

### VI

In sum, the Court concludes that there are no genuine issues of material fact and that the plaintiff is entitled to judgment as a matter of law. Judgment will be entered by the plaintiff against the defendant in the amount of $25,735.04, plus interest as provided by law.

An appropriate order has been filed.